**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Onofre Lopez, Administrator of ) | CASE NO.1:13 CV 1930 | |
| the Estate of Illuminado Lopez, ) | | |
| Plaintiff, ) | JUDGE PATRICIA A. GAUGHAN | |
| ) | | |
| Vs. ) | | |
| ) | | |
| City of Cleveland, et al. ) | **Memorandum of Opinion and Order** | |
| ) | | |
| Defendant. ) | | |

**Introduction**

This matter is before the Court upon the defendant City of Cleveland's Motion for Summary Judgment (Doc. 65). For the following reasons, the motion is GRANTED.

**Facts**

Plaintiff Onofre Lopez, as Administrator of the Estate of Illuminado Lopez, filed this 42 U.S.C. § 1983 Complaint against the City of Cleveland and Police Officers Amy Carraway, Donato Daugenti, Amy Milner, David Schramm, and Michael Tankersley. After dismissing some of plaintiff's state law claims against the City, the parties proceeded to discovery. The Court then granted defendants' motion for summary judgment on the remaining claims. In reversing this Court's grant of summary judgment to the individual

1

defendants on the basis of qualified immunity (and contingent municipal liability claim), the

United States Court of Appeals for the Sixth Circuit set forth the following facts:

> During the evening of July 29, 2011, Lopez was visiting his friend, Maria Cruz, at her home. Lopez's sisters, Melba Cartagena (Melba) and Adelaida Pla, lived in the two houses on either side of the building where Cruz lived. At some point, Lopez got into an argument with Melba's son, Samuel Cartagena (Samuel), and used a baseball bat to break the windows in Samuel's car. Melba called the police in response to Lopez's actions.
>
> Schramm and Milner heard a radio dispatch that an individual was threatening a family
> member and had a bat, and these officers were the first to arrive on the scene. The officers found Lopez sitting in the middle of the street with a beer bottle. At some point shortly thereafter, the officers noticed that Lopez was holding a machete, and they ordered him to drop it. When Lopez refused to comply, Milner shot Lopez with a taser. The taser did not affect Lopez, however, who removed the taser probes from his body. The officers then drew their firearms and radioed for backup.
>
> Shortly thereafter, Carraway, Daugenti, and Tankersley arrived on the scene. The officers tased Lopez two more times, but the tasers had no effect, and Lopez cut the taser wires with his machete. At some point, Lopez moved from the street to the sidewalk in front of Cruz's house. The officers continued to shout at Lopez to drop the machete.
>
> From this point on, the facts are in dispute. Pla testified that when Lopez reached the sidewalk, she approached him and asked him to drop the machete. During that time, she yelled to the officers that she was Lopez's sister, that he was sick, and that she could calm him down and get the machete from him. At some point, however, she grew tired of shouting and walked toward her house. Lopez then shouted at Pla to take the machete from him, and she walked toward him, again shouting that she would get the machete. Pla testified that when she reached a point about seven feet from Lopez, he turned to his right, in her direction, with the machete at his side. At that point, the officers began to fire.
>
> Melba and her son, Noel Cartagena (Noel), both described the moments preceding the shooting differently than Pla. Melba testified that Lopez brought the machete over his head as if he were about to harm himself, and then turned to his left, in the direction of Melba, and asked Melba if that was the way she wanted him to die. Defendant Officers then began shooting. Similarly, Noel testified that Lopez said he was going to stab himself if the officers did not shoot him, and then he brought the machete above his head, toward himself. Noel stated that Lopez was facing the officers, however, and did not turn toward either the right or left.

> Defendant Officers all testified that they did not know who Pla was at the time of the shooting. They also testified that Lopez raised the machete above his head and turned toward Pla immediately before shooting, although their exact descriptions of these final moments varied slightly. Schramm testified that Lopez brought the machete over his head and turned the upper part of his body toward Pla. Similarly, Daugenti testified that Lopez raised the machete over his head while facing forward and then turned toward Pla, who was running toward Lopez. Milner testified that Pla got within five feet of Lopez, and that Lopez turned toward Pla and raised the machete over his head. Tankersley testified that Lopez turned toward Pla with the machete held over his head and made a gesture like he was swinging it at her. Finally, Carraway testified that Pla ran toward Lopez, and that Lopez raised the machete above his head in a threatening manner and turned toward her.
>
> Officers on the scene fired at Lopez, and three bullets struck him. Plaintiff's forensic pathologist, Werner Spitz, M.D., testified that the wounds indicated that Lopez was shot from the front and did not support a conclusion that Lopez had his arms stretched above his head or that he was turned toward the right.

*Lopez v. City of Cleveland,* 2015 WL 5166954 (6th Cir. Sept. 4, 2015).

This matter is now before the Court upon defendant City of Cleveland's Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its

resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993). The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

Count Two alleges that the City owed plaintiff "certain duties to properly hire, supervise, monitor, and train" defendants and other officers and that it breached its duties in

4

that its policies, procedures, regulation of customs and/or lack of adequate training exhibited a reckless indifference toward the public and plaintiff in the following ways: it ignored the serious need for training and supervision of its officers in regard to the use of force; sanctioned the use of excessive force by failing to adequately discipline or terminate officers who the City knew had previously violated the constitutional rights of citizens (including Tankersly); failed to supervise and/or train officers regarding excessive force and to prevent violations of citizens' constitutional rights; and failed to control and/or discipline officers known to use excessive force.

> The Sixth Circuit has set forth the law on § 1983 municipal liability:
>
> It is well established that a municipal entity may not be sued for injuries inflicted solely by its employees or agents under § 1983. *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). A plaintiff may only hold a municipal entity liable under § 1983 for the entity's own wrongdoing. *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir.2006)... Stated otherwise, for a municipal entity to be liable for a violation of § 1983, a plaintiff must show: (1) a deprivation of a constitutional right; and (2) that the municipal entity is responsible for that deprivation. *Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495 (6th Cir.1996)... Moreover:
>
>> [a] local government entity violates § 1983 where its official policy or custom actually serves to deprive an individual of his or her constitutional rights. A city's custom or policy can be unconstitutional in two ways: 1) facially unconstitutional as written or articulated, or 2) facially constitutional but consistently implemented to result in constitutional violations with explicit or implicit ratification by city policymakers.. Where the identified policy is itself facially lawful, the plaintiff must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice. Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. In other words, the risk of a constitutional violation arising as a result of the inadequacies in the municipal policy must be plainly obvious.
>
> *Gregory*, 444 F.3d at 752. A plaintiff must show a direct causal link between the custom and the constitutional deprivation; that is, she must show that the particular injury was incurred because of the execution of that policy... To show the existence of

> a municipal policy or custom leading to the alleged violation, a plaintiff can identify: (1) the municipality's legislative enactments or official policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance of acquiescence of federal violations.

Baynes v. Cleland, 799 F.3d 600, 620-21 (6th Cir. 2015) (internal citations and quotations omitted).  *See also Brown v. Chapman,* No. 15-3506 (6th Cir. February 19, 2016) ("A plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.")

Defendant moves for summary judgment on the claim asserted against it, Count Two. Defendant maintains that summary judgment is warranted because when asked in discovery regarding the details supporting this claim, plaintiff merely referred to its Complaint.  Now, at this juncture, the sole evidence presented by plaintiff is the opinion of its expert, Ken Katsaris. Defendant asserts that Katsaris expressed no opinions relating to the specific allegations contained in Count Two, but presents two novel theories of liability.  Defendant contends that Katsaris's opinion is inadmissible because it is based on unsupported legal conclusions.  Further, even assuming the expert's opinion is admissible, his two theories of liability fail as a matter of law.  Namely, the expert opines that the Cleveland Police Department failed to adequately train its officers about the use of force when dealing with mentally and emotionally disturbed subjects and there was a completely inadequate internal investigation of the incident which lead to an improper ratification of excessive and unnecessary force.  As to the first theory, defendant argues that plaintiff cannot rely solely on a single instance to infer a policy of deliberate indifference and plaintiff has not identified other similar incidents.  Nor has plaintiff shown that the City's training itself was inadequate

and, in fact, it was adequate.  As to the second theory, the evidence shows that the City's investigation of the incident and administrative review was thorough and appropriate and, therefore, there was no ratification.

Initially, plaintiff asserts that summary judgment should be denied because defendant only addressed inadequate training and ratification, and not inadequate hiring and a policy of failing to discipline- all of which were alleged in Count Two.  However, defendant moved for summary judgment as to the one count asserted against it by identifying the lack of evidence to support the claim.  Therefore, the entirety of Count Two is before this Court.

Plaintiff asserts that there are issues of fact precluding summary judgment as to whether the City 1) provided inadequate training to its officers, 2) ratified the alleged unconstitutional actions of its officers, 3) had inadequate hiring procedures, and 4) had a policy, practice, or custom of failing to discipline officers who used excessive force. Each will be addressed.

**(1) inadequate training**

Plaintiff's Complaint simply alleged that the City "ignor[ed] the serious need for training and supervision of its officers in regard to the use of force," "fail[ed] to supervise and/or train officers to prevent violations of citizens' constitutional rights," and "fail[ed] to adequately train and or supervise officers regarding excessive force."

The Sixth Circuit has recently re-stated the law on inadequate training:

Inadequate training may serve as the basis for § 1983 liability where it "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). This requirement ensures that these claims stay within the parameters drawn in *Monell*, as "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be

7

> properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id*. at 389.
>
> In order to impose liability on the City of Cleveland, plaintiff must show "(1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the [City's] deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury." *Plinton v. Cty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (internal quotation marks omitted).

*Brown v. Chapman*, *supra.*

Morevoer, "the fact that a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Frodge v. City of Newport*, 501 F. Appx. 519, 534 (6th Cir. 2012) (citations omitted). As to the deliberate indifference prong, the Sixth Circuit has noted,

> ... we have interpreted *City of Canton v. Harris* "as recognizing at least two situations in which inadequate training could be found to be the result of deliberate indifference." *Cherrington v. Skeeter*, 344 F.3d 631, 646 (6th Cir. 2003). "'One is failure to provide adequate training in light of foreseeable consequences that could result from the lack of instruction,' as would be the case, for example, if a municipality failed to instruct its officers in the use of deadly force," and a second is "'where the city fails to act in response to repeated complaints of constitutional violations by its officers.'" *Id.* (quoting *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999)). Plaintiff does not allege that the City of Cleveland "fail[ed] to act in response to repeated complaints of constitutional violations by its officers." *See id.* Thus, she must show that the City "fail[ed] to provide adequate training in light of foreseeable consequences." *Id*.

*Brown v. Chapman*, *supra*; see also *Bonner-Turner v. City of Ecorse,* No. 14-2337, 2015 WL 5332465*,* at *13 (6th Cir. Sept. 14, 2015) (internal citations omitted) ( "To show deliberate indifference, a plaintiff must show prior instances of unconstitutional conduct demonstrating that the municipality has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury. Alternatively, a single

8

violation, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability.")

Defendant submits the declaration of Brandon Kutz, the Officer-in-Charge of the Division of Police's Training Section, who states that the Ohio Peace Officers Training Academy (OPOTA) training requirements are approved by Ohio's Attorney General and established as the mandatory minimum for the training of peace officers in Ohio.  Cleveland's Division of Police Academy provides to its recruits and current members the training required by the State of Ohio through OPOTA.  The Academy's curriculum exceeds the requirements of the Ohio Peace Officer Training Commission and the Academy is an approved and accredited school for the training of peace officers.  The curriculum includes training materials regarding interacting with individuals who may be suffering from mental illness, which Kutz outlines.  The Academy also provides the required OPOTA training regarding the use of force, including the use of deadly force.  The Division of Police also has a written policy prohibiting the use of excessive force.  (Kutz decl.)

Plaintiff submits the expert report and deposition testimony of its expert, Ken Katsaris, to assert that there is evidence that the City failed to adequately train its officers. The report opines, "Cleveland Police Department failed to adequately train its officers about the use of force, when dealing with mentally and/or emotionally disturbed subjects, hence were deliberately indifferent to Lopez's constitutional rights."  (Doc. 65 Ex. B)   Additionally, according to Katsaris's deposition testimony, the officers in this instance violated numerous nationally recognized standards relating to interacting with mentally ill and/or emotionally

9

disturbed subjects.  The officers used inappropriate intervention strategies because they failed to have the appropriate training.  In particular, the involved officers breached nationally recognized police standards by failing to create a barricaded perimeter to enclose plaintiff, failing to dedicate proper resources to crowd control, generally failing to interact with plaintiff in a responsible manner in light of the fact that he was mentally ill and exhibiting intentions to commit suicide, and misusing the Tasers.  This is direct evidence of their inadequate training.  (Katsaris depo.)  Finally, plaintiff submits the findings issued by the Department of Justice (DOJ) on December 4, 2014 and the subsequent Consent Decree entered into by defendant and the DOJ in May 2015, which plaintiff asserts shows evidence of a pattern of constitutional violations and inadequate training including officers' approach to the mentally ill.

The Court agrees with defendant that summary judgment is warranted on the inadequate training allegation. Initially, although the Complaint alleged that the City failed to adequately train its officers regarding excessive force, Katsaris opines that the City failed to train its officers about the use of force when dealing with mentally and emotionally disturbed subjects. In his deposition testimony, however, Katsaris acknowledges that his opinion is based on the training he claims the officers involved received- not the adequacy of the training program itself. In fact, there is no discussion of the contents of the training program in his report. Moreover, the expert's deposition testimony impermissibly goes beyond his report and identifies new theories as to how these officers breached nationally recognized police standards (i.e, the failure to set up a barricade, etc.). And, Katsaris could not identify any similar incidents involving Cleveland police officers and a mentally or emotionally

disturbed subject. Nonetheless, even considering the deposition testimony, Katsaris does not identify any failure on the part of the City that evidences its deliberate indifference.

Furthermore, as pointed out by defendant, the Sixth Circuit has recognized that although "an expert's opinion may embrace an ultimate issue to be decided by the trier of fact, the issue embraced must be a factual one. The expert can testify, if a proper foundation is laid, that the discipline in the Detroit Police Department was lax. He also could testify regarding what he believed to be the consequences of lax discipline. He may not testify, however, that the lax discipline policies of the Detroit Police Department indicated that the City was deliberately indifferent to the welfare of its citizens." *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994). Katsaris opines that the City failed to adequately train its officers about the use of force in dealing with mentally ill subjects and, hence, were deliberately indifferent to plaintiff's constitutional rights. This is an inappropriate legal conclusion that the City was deliberately indifferent.

Even assuming Katsaris's opinions are admissible, the claim of inadequate training fails because plaintiff presents no other evidence of inadequate training other than Katsaris's opinions that the involved officers' actions fell below nationally recognized police standards. Plaintiff fails to present evidence (or allege) that the City "failed to provide adequate training in light of foreseeable circumstances" or "failed to act in response to repeated complaints of constitutional violations by its officers." In short, plaintiff does not present evidence showing that the City's training itself was inadequate and the inadequate training was a result of deliberate indifference to counter defendant's evidence of the adequacy of the City's training which is required by the State of Ohio. In fact, other courts have held that where a

11

municipality adheres to state standards for training, there cannot be a finding of deliberate indifference. *See Tapia v. City of Greenwood*, 965 F.2d 336, 339 (7th Cir. 1992) ("In Indiana, police officer training is governed by state law. [Plaintiff] offered no evidence to indicate that the City failed to adhere to the minimum standards for training police officers under Indiana law.")

Plaintiff also improperly relies on the DOJ investigation and Consent Decree, both occurring subsequent to the facts of this case, as a means to show that the City's training is inadequate is improper. The Consent Decree states:

> 11. This Agreement will not be construed as an admission or evidence of liability under any federal, State, or municipal law including 42 U.S.C. § 1983. Nor is the City's entry into this Agreement an admission by the City, CDP, or its officers and employees that they have engaged in any unconstitutional, illegal, or otherwise improper activities or conduct. The Parties acknowledge the many CDP officers who have continued to work diligently and with integrity despite challenging circumstances.

Further,

> 403. This Agreement is enforceable only by the Parties. No person or entity is intended to be a third-party beneficiary of the provisions of this Agreement for purposes of any civil, criminal, or administrative action. Accordingly, no person or entity may assert any claim or right as a beneficiary or protected class under this Agreement.

(Doc. 67 Ex. B)

The City is entitled to summary judgment on the claim of inadequate training.

**(2) ratification**

Defendant outlines in detail the use of deadly force investigation performed by the Division of Police's Use of Deadly Force Investigation Team (UDFIT), submission of the investigative file to the County Prosecutor for presentation to a grand jury, and administrative

12

review by members of the Division of Police.

Plaintiff asserts that the City ratified the unconstitutional use of force.  Katsaris opined: "There was a completely inadequate internal investigation of this incident which lead to an improper ratification of excessive and unnecessary force, which was objectively unreasonable."  (Doc. 65 at 5) Plaintiff asserts that the fact that no officer was disciplined as a result of the investigation shows that the City expressly approved the manner in which this case was handled. As such, a reasonable factfinder could conclude that the City ratified the unconstitutional conduct.

Summary judgment is warranted on this claim. Not only does plaintiff not present evidence that the investigation was "so inadequate as to constitute ratification of the alleged constitutional violation," but the Sixth Circuit has recently explained, "This theory of municipal liability, however, applies only when the ratification was carried out by an official with final decision-making authority.  Plaintiff does not name a final decisionmaker, but rather alleges that the Cleveland police department, as a whole, ratified the officers' conduct. This is insufficient to establish the requisite degree of culpability." *Brown v. Chapman, supra* (internal citations omitted).  Not only does plaintiff not plead ratification of an inadequate investigation by an official with decisionmaking authority, but he only argues that the City ratified the use of force.

Summary judgment is warranted on this claim.

**(3) inadequate hiring**

Plaintiff asserts that the City's inadequate hiring practices was the driving force behind the shooting.  Plaintiff maintains that Tankersly, "who likely fired the fatal shot in this

13

case"[1], had two prior instances of using excessive force. Tankersly was fired by the City for his conduct but was later reinstated. Likewise, two of the other named officers were involved in a shooting death of a citizen.

Plaintiff appears to rely on *Bryan County v. Brown,* 520 U.S. 397 (1997), which recognized that a "failure to screen applicants for law enforcement positions rises to the level of deliberate indifference only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right."  By pointing to the deposition testimony referenced above, plaintiff simply does not support his inadequate hiring claim so as to find an issue of fact that the City acted with deliberate indifference.

This claim fails.

**(4) policy of failing to discipline officers**

Plaintiff asserts that the City had a policy, practice, or custom of failing to discipline officers who used excessive force.  Plaintiff apparently relies on the deposition testimony of Tankersly, Schramm, and Daugenti.  As to the latter two, plaintiff asserts that they had previously been involved in an incident where they fired and killed a citizen and a lawsuit apparently resulted. As to Tankersly, he testified that a citizen died of asphyxiation as a result of a "submission" imposed by him.  Tankersly was suspended for 90 work days.  He appealed his suspension and was ultimately reinstated. In 1995, Tankersly was charged with felonious

---

[1]   Defendant points out that the forensic examinations of the incident did not conclude that a bullet which struck plaintiff came from Tankersly.

assault with a weapon and plead guilty to misdemeanor assault.  In 1996, Tanksersly was fired from the police department, for reasons unknown, and re-hired two years later.

Once again, "Municipal liability only attaches where a custom, policy, or practice attributable to the municipality was the moving force behind the violation of the plaintiff's constitutional rights." *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) (citations omitted).  "In the failure to discipline context, it is appropriate to apply the deliberate indifference standard adopted by the Supreme Court in *City of Canton v. Harris*, 489 U.S. 378 (1989), to require a showing of a history of widespread abuse that has been ignored by the City."  *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994).  Plaintiff's evidence, offered in the way of deposition testimony of the three officers, is insufficient to raise an issue of fact that the City had a widespread practice of failing to discipline which resulted in deliberate indifference.  With regard to Schramm and Daugenti, there is no evidence that they should have been disciplined.  Nor does plaintiff offer evidence showing that the City's improper response to Tankersly's background was the moving force behind the violation of plaintiff's constitutional rights.

This claim fails.

For these reasons, plaintiff's claim against the City must be dismissed.

**Conclusion**

For the foregoing reasons, defendant City of Cleveland's Motion for Summary Judgment is granted.

IT IS SO ORDERED.

      /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 3/1/16